**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 13-7022**

# United States Court of Appeals
# For the District of Columbia Circuit

NORMAN WILLIAMS AND DIANE HOWE, AS LEGAL REPRESENTATIVES OF J.H.,

*Plaintiffs-Appellants*

v.

ROMARM, S.A. AND DOES COMPANY DISTRIBUTORS,

*Defendants-Appellees*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:12-CV-00436-EGS, HON. EMMET G. SULLIVAN**

**BRIEF FOR APPELLEE**

Anthony M. Pisciotti, Esq.
Jeffrey M. Malsch, Esq.
PISCIOTTI, MALSCH & BUCKLEY, P.C.
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
Telephone:   (973) 245-8100
Facsimile:   (973) 245-8101
apisciotti@pmblegalfirm.com
jmalsch@pmblegalfirm.com

James W. Porter, III, Esq.
BRADLEY ARANT
BOULT CUMMINGS LLP
1615 L Street, N.W.
Suite 1360
Washington, DC  20036
Telephone:   (202) 719-8232
Facsimile:   (202) 719-8332
jporter@babc.com

*Attorneys for Defendant-Appellee*
*National Company Romarm S.A. i/s/h/a Romarm, S.A.*

September 5, 2013

## CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES

Pursuant to this Court's Circuit Rule 28(a)(1), counsel for Defendant-Appellee National Company Romarm S.A. i/s/h/a Romarm, S.A. ("Romarm") hereby certifies that:

**(A)    Parties.**

The parties in interest in this case are the plaintiffs, Normal Williams and Diane, as legal representatives of J.H., the defendant Romarm, and the fictitious defendants "Does Company Distributors."   No party intervened in the District Court or in this Court.

**(B)    Rule 26.1 Corporate Disclosure Statement.**

Romarm is a Romanian-owned company that has no corporate parents, affiliates, and/or subsidiaries.

**(C)    Rulings Under Review.**

Plaintiffs-Appellants are appealing from the Memorandum Opinion of United States District Judge Emmet G. Sullivan, dated and filed on February 4, 2013, and the Order granting Defendant-Appellant Romarm's Motion to Dismiss.

**(D)    Related Cases.**

The case <u>Jefferies v. District of Columbia</u>, is a wrongful death lawsuit commenced by Nardyne Jefferies (the parent of Brishell Tashe Jones) arising from the same facts at issue in this case.   Unlike this lawsuit, the <u>Jefferies</u> case was

i

timely commenced in the Superior Court of the District of Columbia (Civil Action No. 0002445-11) on March 30, 2011, which was within the wrongful death statute of limitations.  The case was  removed to the United States District Court for the District of Columbia (No. 1:11-cv-01159-RCL) based on diversity jurisdiction. Romarm S.A. ("Romarm") was also named as a defendant in that lawsuit, but it was never served and did not join issue.  Notwithstanding, on January 8, 2013, the trial court *sua sponte* dismissed Romarm with prejudice for failure to state a claim upon which relief may be granted.  916 F. Supp. 2d 42 (2013).  Thereafter, the case was remanded to state court due to lack of diversity jurisdiction.  <u>Jefferies v. District of Columbia</u>, 2013 U.S. Dist. LEXIS 21981 (Feb. 19, 2013).

Dated:      Florham Park, NJ
            September 5, 2013

                        Respectfully submitted,

                   By:  s/ James W. Porter, III
                        James W. Porter, III, Esq.
                        BRADLEY ARANT
                        BOULT CUMMINGS LLP
                        1615 L Street, N.W.
                        Suite 1360
                        Washington, DC  20036
                        (202) 719-8232
                        (202) 719-8332 facsimile
                        jporter@babc.com

                        and

By:  s/ Jeffrey M. Malsch
Jeffrey M. Malsch, Esq.
Anthony M. Pisciotti, Esq.
PISCIOTTI, MALSCH & BUCKLEY, P.C.
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
(973) 245-8100
(973) 245-8101 facsimile
jmalsch@pmblegalfirm.com
apisciotti@pmblegalfirm.com

ATTORNEYS FOR DEFENDANT-APPELLEE NATIONAL COMPANY ROMARM S.A. I/S/H/A ROMARM

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES**.......................................................................i

**TABLE OF CONTENTS** .......................................................iv

**TABLE OF AUTHORITIES** ................................................ vii

**GLOSSARY OF ABBREVIATIONS** ....................................1

**STATEMENT OF THE JURISDICTION** .............................2

**STATEMENT OF THE ISSUES**............................................2

**STATEMENT OF THE CASE**.................................................3

**STATEMENT OF THE FACTS** .............................................5

    I.    PLAINTIFFS VOLUNTARILY DISMISSED THEIR FIRST LAWSUIT AGAINST ROMARM AFTER DEFENDANT FILED A MOTION TO DISMISS...................5

    II.    PLAINTIFFS FILED A SECOND LAWSUIT AGAINST ROMARM ...................................................5

    III.    PLAINTIFFS' ALLEGATIONS AGAINST ROMARM .........................6

    IV.    UNDISPUTED FACTS ABOUT ROMARM.........................7

**SUMMARY OF THE ARGUMENT** ......................................8

**ARGUMENT** .........................................................................9

    I.    PLAINTIFFS' APPEAL SHOULD BE DISMISSED WITH PREJUDICE FOR FAILING TO COMPLY WITH THE FEDERAL RULES OF APPELLATE PROCEDURE .......................................................9

II. **ARGUMENTS THAT ARE RAISED FOR THE FIRST TIME ON APPEAL SHOULD NOT BE CONSIDERED** ......................................11

III. **THE DISTRICT COURT DID NOT ERR WHEN DISMISSING PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION** ...........................................................12

    A. **Standard of Review** ...........................................................12

    B. **Argument** ...........................................................13

        1. **Romarm Does Not Have Sufficient "Minimum Contacts" to Establish Personal Jurisdiction** ...................................... 14

            a. A Court Cannot Exercise Personal Jurisdiction Over a State-Owned Foreign Corporation Unless the Corporation Has Minimum Contacts With the Forum ...................................... 15

            b. Plaintiffs Failed to Allege Facts Demonstrating That Romarm Has Sufficient Minimum Contacts to Establish Personal Jurisdiction or to Demonstrate That Exercising Personal Jurisdiction Over Romarm Comports With Notions of Fair Play and Substantial Justice ...................................... 17

        2. **Plaintiffs Cannot Establish Specific Personal Jurisdiction Under Section 13-423(a)(3) of the District's Long-Arm Statute** ...................................... 22

        3. **The SLA Does Not Establish Personal Jurisdiction** ...................................... 23

IV.  THE DISTRICT COURT DID NOT ABUSE ITS
     DISCRETION WHEN DENYING PLAINTIFFS'
     MOTION   TO   CONDUCT   PERSONAL
     JURISDICTIONAL DISCOVERY .................................................25

     A.  **Standard of Review** ...........................................................25

     B.  **Argument** ............................................................................25

V.   THE DISMISSAL OF PLAINTIFFS' COMPLAINT CAN
     ALSO BE AFFIRMED ON DIFFERENT GROUNDS
     THAN THE ONE RELIED ON BY THE DISTRICT
     COURT .......................................................................................27

     A.  **Standard of Review** ...........................................................27

     B.  **Argument** ............................................................................28

          1.  **Plaintiffs' Complaint Can Also Be
              Dismissed for Lack of Subject Matter
              Jurisdiction** ...............................................................28

          2.  **Plaintiffs' Complaint Can Also Be
              Dismissed for a Failure to State a Claim
              Upon Which Relief May Be Granted** ...................... 33

CONCLUSION ..............................................................................36

CERTIFICATE OF COMPLIANCE ...........................................37

CERTIFICATE OF SERVICE ......................................................39

ADDENDUM .................................................................................40

# TABLE OF AUTHORITIES

C<small>ASES</small>

Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family
Found., Inc., 607 F. Supp. 2d 185 (D.D.C. 2009) ................................18

Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34 (D.D.C.
2003) ................................................................................................26

* Asahi Metal Indus. V. Super. Ct. of Cal., 480 U.S. 102 (1987) ........18, 20

Barr v. Clinton, 370 F.3d 1196 (D.C. Cir. 2004)....................................30

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................33

Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F.
Supp. 2d 68 (D.D.C. 2004) ................................................................28

Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72
(D.D.C. 2003) ....................................................................................13

* Caribbean Broad. Sys. Ltd. v. Cable & Wireless, PLC, 148 F.3d
1080 (D.C. Cir. 1988) ....................................................................25, 26

Conto v. Concord Hosp., Inc., 265 F.3d 79 (1st Cir. 2001) ...................10

Crane v. Zoological Soc'y, 894 F.2d 454 (D.C. Cir. 1990).............13, 18

Delahanty v. Hinckley, 686 F. Supp. 920 (D.D.C. 1986).......................20

Dorsey v. Am. Express Co., 499 F. Supp. 2d 1 (D.D.C. 2007)...............34

El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668 (D.C. Cir. 1996),
abrogated on other grounds by Samatar v. Yousuf, 130 S. Ct.
2278 (2010)........................................................................................25

Erickson v. Pardus, 551 U.S. 89 (2007)................................................33

FC Inv. Group LC v. IFX Mkts., Ltd., 529 F.3d 1087 (D.C. Cir. 2008) .................................................................................12, 25

Fed. Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270 (3d Cir. 1993) ...............................................................................31

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983) ...............................................16

Filus v. Lot Polish Airlines, 907 F.2d 1328 (2d Cir. 1990) .....................................32

Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d 438 (1990) ..........................................................................16

Gatewood v. Fiat, S.p.A., 617 F.2d 820 (D.C. Cir. 1979) .......................................20

Gen. Elec. Capital Corp. v. Grossman, 991 F.2d 1376 (8th Cir. 1993) ...............................................................................29

Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002) ...........................................................12, 13, 18, 22

Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218 (6th Cir, 1991), cert. denied, 503 U.S. 978 (1992) ......................................31

GSS Group Ltd. v. Nat'l Port Auth., 774 F. Supp. 2d 134 (D.D.C. 2011), aff'd, 680 F.3d 805 (D.C. Cir. 2012)..........................................16

*GSS Group Ltd. v. Nat'l Port Auth., 680 F.3d 805 (D.C. Cir. 2012) ...........................................................................15, 16, 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)..........................................................................18, 19

Helmer v. Doletskaya, 393 F.3d 201 (D.C. Cir. 2004).  .......................................23

Hunter v. District of Columbia, 384 F. Supp. 2d 257 (D.D.C. 2005).  .................................................................................28

J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011)....................20, 21

Jefferies v. District of Columbia, 916 F. Supp. 2d 42 (2013)................................... ii

Jefferies v. District of Columbia, No. 1:11-cv-01159-RCL, 2013
    U.S. Dist. LEXIS 21981 (Feb. 19, 2013) ............................................................ ii

Jungquist v. Al Nahyan, 115 F.3d 1020 (D.C. Cir. 1997)......................................29

Kilburn v. Socialist People's Libyan Arab Republic, 376 F.3d
    1123 (D.C. Cir. 2004) .........................................................................................29

Kowal v. MCI Communications Corp., 16 F.3d 1271 (D.C. Cir.
    1994) ....................................................................................................................27

McFarlane v. Esquire Magazine, 74 F.3d 1296 (D.C. Cir. 1996) ....................23, 24

Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217 (D.C.
    Cir. 1986)............................................................................................................24

Nails v. England, 311 F. Supp. 2d 116 (D.D.C. 2004)...........................................35

Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417
    F.3d 1272 (D.C. Cir. 2005)..................................................................................27

NRM Corp. v. Hercules, Inc., 758 F.2d 676 (D.C. Cir. 1985) ...............................11

Potter v. District of Columbia, 558 F.3d 542 (D.C. Cir. 2009) ..............................11

Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146,
    (D.D.C. 2007) ......................................................................................................34

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82
    (D.C. Cir. 2002) .............................................................................................15, 29

Reuber v. United States, 787 F.2d 599 (D.C. Cir. 1986)........................................13

Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416 (D.C.
    Cir. 1992) .............................................................................................................12

Roz Trading Ltd. v. Zeromax Group, Inc., 517 F. Supp. 2d 377
    (D.D.C. 2007) ......................................................................................................12

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999) ......................................2, 12

Saunders v. Air Fl., Inc., 558 F. Supp. 1233 (D.D.C. 1983) ....................................34

Second Amendment Found. v. U.S. Conference of Mayors, 274
    F.3d 521 (D.C. Cir. 200)............................................................................12, 13, 18

Singleton v. Wulff, 428 U.S. 106 (1976) ..................................................................11

Sky Harbor Air Serv., Inc. v. Reams, No. 11-8004, 2012 U.S.
    App. LEXIS 14899 (10th Cir. July 20, 2012) ......................................................10

Srour v. Barnes, 670 F. Supp. 18 (D.D.C. 1987) .....................................................28

Stewart v. Evans, 351 F.3d 1239 (D.C. Cir. 2003)...................................................25

TMR Energy Group v. State Property Fund of Ukraine, 411 F.3d
    296 (D.C. Cir. 2005) ..............................................................................................16

Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade
    Corp., 204 F.3d 384 (2d Cir. 2000), cert. denied, 532 U.S. 904
    (2001)......................................................................................................................31

* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286
    (1980)..........................................................................................................18, 20, 21

## STATUTES

28 U.S.C. § 1291 ..........................................................................................................2

28 U.S.C. § 1294 ..........................................................................................................2

28 U.S.C. § 1330 .................................................................................................. 15, 22

28 U.S.C. § 1602 ..........................................................................................................1

* 28 U.S.C. § 1603 ................................................................................................ 15, 29

* 28 U.S.C. § 1604 ......................................................................................................29

28 U.S.C. § 1605 ........................................................................... 3, 29, 30, 32

D.C. Code § 7-2551.01 ............................................................................. 1, 3

D.C. Code § 7-2551.02 ........................................................................ 3, 23, 24

D.C. Code § 13-423 ................................... 3, 6, 8, 11, 13, 14, 22, 23, 24

*D.C. Code § 16-2702 ......................................................................... 34, 35

## RULES

D.C. Cir. R. 26.1 ............................................................................................. i

D.C. Cir. R. 28 ................................................................................................. i

Fed. R. App. P. 28 ...................................................................................... 9, 10

Fed. R. App. P. 32 ...........................................................................................37

Fed. R. Civ. P. 8 ...............................................................................................33

*Fed. R. Civ. P. 12 .................................... 3, 4, 8, 13, 17, 26, 32, 33

## OTHER DOCUMENTS

D.C. Act 19-338 ...............................................................................................35

D.C. Act 19-350 ...............................................................................................35

*Authorities upon which we chiefly rely are marked with asterisks.*

# GLOSSARY OF ABBREVIATIONS

| ABBREVIATION | FULL TITLE |
|---|---|
| Add. | Addendum |
| App. | Appendix |
| District | Washington, D.C. |
| District Court | The United States District Court for the District of Columbia |
| Incident Rifle | Romarm semi-automatic rifle, with Serial Number CA-4376-70 |
| First Lawsuit | <u>Norman Williams, et al. v. Romarm and Does Company Distributor</u>, Civil Action No. 1:11-cv-01924-ABJ (D.D.C. 2011), removed from the Superior Court of the District of Columbia, Civil Division on August 30, 2011 and assigned to the Honorable Amy Berman Jackson |
| FSIA | Foreign Sovereign Immunity Act, 28 U.S.C. 1602, <u>et seq.</u> |
| Plaintiffs | Norman Williams and Diane Howe, as legal representatives of J.H. |
| Romarm | National Company Romarm S.A. |
| Rule | Federal Rule of Civil Procedure |
| Second Lawsuit | <u>Norman Williams, et al. v. Romarm and Does Company Distributor</u>, Civil Action No. 1:12-cv-00436-EGS (D.D.C. 2012), originally filed on March 20, 2012 and assigned to the Honorable Emmet G. Sullivan |
| SLA | District of Columbia's Assault Weapons Manufacturing Strict Liability Act, D.C. Code §§ 7-2551.01, <u>et seq.</u> |

## STATEMENT OF THE JURISDICTION

**I.    JURISDICTION OF THE DISTRICT COURT.**

Defendant argued that the District Court did not have subject matter or personal jurisdiction over Romarm and sought to have the case dismissed pursuant to Rule 12.  In dismissing the case, the District Court properly exercised its discretion to address personal jurisdiction before addressing subject matter jurisdiction.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999).  The District Court found that Plaintiffs failed to allege personal jurisdiction over Romarm and dismissed the case accordingly.  (App. at 44.)

**II.    JURISDICTION OF THIS COURT.**

Appellate jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1291 and 1294(1) as this is an appeal from a final order.  See 28 U.S.C. §§ 1291, 1294.  The District Court entered an order dismissing the case on February 4, 2013.  (App. at 46.)  Plaintiffs filed their Notice of Appeal on February 7, 2012.  (App. at 6, Dkt. Entry No. 24.)

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in dismissing Plaintiffs' lawsuit for failure to allege personal jurisdiction over Romarm.

2.     Whether the District Court erred in failing to allow Plaintiffs to conduct jurisdictional discovery.

2

3.     Whether Plaintiffs' lawsuit could have alternatively been dismissed for lack of subject matter jurisdiction.

4.     Whether Plaintiffs' lawsuit could have alternatively been dismissed for failure to state a claim upon which relief may be granted.

## STATEMENT OF THE CASE

This case arose from the shooting death of Plaintiffs' son on March 22, 2010 in the District.  Plaintiffs alleged that a rifle manufactured by Romarm, a foreign corporation owned by the Romanian government, was utilized in the shooting. Plaintiffs alleged that personal jurisdiction over Romarm was appropriate under the District's long-arm statute, D.C. Code § 13-423(a)(3), solely because one of Romarm's firearms was allegedly used in the District.  Plaintiffs alleged that subject matter jurisdiction existed pursuant to the "commercial activities" exception to the FSIA, 28 U.S.C. § 1605(a)(2), based on Romarm's "commercial conduct."  Plaintiffs' sole liability allegation was that since Romarm's firearm was recovered in the District, Romarm was strictly liable pursuant to the SLA, D.C. Code § 7-2551.01 and 7-2551.02.

On May 14, 2012, Romarm filed a motion to dismiss pursuant to Rule 12(b), arguing that Plaintiffs' Complaint must be dismissed (1) pursuant to the FSIA, (2) due to lack of personal jurisdiction, and (3) because the applicable statute of limitations had expired.  Pursuant to the Court's briefing schedule, Plaintiffs were

3

required to file an opposition by May 28, 2012.  However,  Plaintiffs failed to file an opposition for over six (6) months, and on January 7, 2013, the District Court issued an order requiring Plaintiffs to respond to the motion to dismiss by January 18, 2013.

Plaintiffs filed their opposition on January 18, 2013, and also filed a motion for jurisdictional discovery.  Plaintiffs argued that they were entitled to jurisdictional  discovery to establish the "proliferation of Romarm's weapons in the U.S. market" and to establish Romarm's "awareness that its weapons are destined for the U.S. market." They also opposed the motion to dismiss by arguing that under the FSIA, a plaintiff need only establish that subject matter jurisdiction exists and that personal jurisdiction is assumed.

On February 4, 2013, the District Court issued an order granting Romarm's motion to dismiss pursuant to Rule 12.  The District Court exercised its discretion to address personal jurisdiction before addressing subject matter jurisdiction and found that Plaintiffs failed to allege personal jurisdiction over Romarm.  The District Court also denied Plaintiffs' request for personal jurisdictional discovery because Plaintiffs failed to establish a good faith belief that discovery would enable Plaintiffs to show that Romarm has minimum contacts with the forum. Since the District Court determined that its holding on the personal jurisdiction issues resolved the case, the District Court did not reach a determination on

Defendant's motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted.  The Order was entered on February 4, 2013, and Plaintiffs filed a Notice of Appeal on February 7, 2013.

## STATEMENT OF THE FACTS

### I.    PLAINTIFFS VOLUNTARY DISMISSED THEIR FIRST LAWSUIT AGAINST ROMARM AFTER DEFENDANT FILED A MOTION TO DISMISS.

On August 30, 2011, Plaintiffs commenced a lawsuit against Romarm in the Superior Court of the District of Columbia, Civil Division, under the case style of Norman Williams, et al. v. Romarm and Does Company Distributor, (C.A. No. 002349-2011).  (App. at 2, Dkt. Entry No. 2-1.)  Romarm timely removed the case to the District Court, and the case was assigned to the Honorable Amy Berman Jackson (Civil Action No. 1:11-cv-01924-ABJ).  (App. at 2, Dkt. Entry No. 2-3.)  After Romarm filed a motion to dismiss, Plaintiffs filed a "Praecipe," and the Court permitted Plaintiffs to voluntarily dismiss their case.  (App. at 2, Dkt. Entry No. 2-7.)

### II.    PLAINTIFFS FILED A SECOND LAWSUIT AGAINST ROMARM.

On March 20, 2012, less than one (1) week before seeking to voluntarily dismiss their First Lawsuit, Plaintiffs commenced a second lawsuit in the District Court, and the case was assigned to the Honorable Emmet G. Sullivan (Civil Action No. 1:12-cv-00436-EGS).  (App. at 21.)  Defendant originally filed a motion to dismiss the Second Lawsuit based on the doctrine of prior action

5

pending.  (App. at 2, Dkt. Entry No. 2.)  However, by Stipulation filed on April 23,

2012, the motion was withdrawn, and the Court permitted Defendant to file an

Amended Rule 12(b) Motion to Dismiss on or before May 14, 2012.  (App. at 2,

Dkt. Entry No. 3-3.)

## III.    PLAINTIFFS' ALLEGATIONS AGAINST ROMARM.

Plaintiffs asserted wrongful death claims arising from the shooting death of

their son, J.H., on March 22, 2010 in the District.   (App. at 21, ¶¶ 1-2.)

Specifically, Plaintiffs alleged that Romarm manufactured, assembled, and/or

distributed the rifle that was utilized in the shooting deaths of Plaintiffs' decedent.

(App. at 21, ¶ 2.)   Plaintiffs alleged further that the presence of the incident

weapon in the District of Columbia constituted a public nuisance.  (App. at 22, ¶

5.)  Finally, Plaintiffs contended that Romarm was strictly liable pursuant to the

SLA.  (App. at 21, ¶ 3.)  There were no other liability allegations in the Complaint.

(App. at 21-22.)

Plaintiffs contended that there was specific personal jurisdiction, pursuant to

District of Columbia Code § 13-423(a)(3) because a rifle manufactured by

Romarm  "was used to kill J.H. in the District."  (App. at 21, ¶ 2.)  Plaintiffs also

contended that personal jurisdiction was proper pursuant to the SLA.  (App. at 21-

22, ¶ 3.)  Finally, Plaintiffs claimed that subject matter jurisdiction was based on

the commercial activity exception to the FSIA.  (App. at 22, ¶ 6.)  Plaintiffs'

Complaint contained no other allegations to support jurisdiction.  (App. at 21-22.)

## IV.    UNDISPUTED FACTS ABOUT ROMARM.

Romarm, a foreign corporation that is owned by the Romanian government,

is a manufacturer of firearms located in Bucharest, Romania.  (App. at 15-16, ¶¶ 4-

6.)  Romarm, an independent entity, has never transacted business in the District;

has never contracted to supply services in the District; has never conducted or

solicited business in the District; and possesses no real property in the District.

(App. at 16-17, ¶¶ 7-17.)  Moreover, Romarm does not regularly conduct business

or engage in any other persistent course of conduct in the District.  (App. at 16, ¶¶

10-12.)  Likewise, Romarm does not derive substantial revenue from goods used or

consumed or services rendered in the District.  (App. at 16, ¶ 12.)

The rifle allegedly utilized in the shooting deaths of Plaintiffs' decedents

(Serial Number CA-4376-70) was manufactured in 1970 and was sold to Century

International Arms, Inc., a firearms importer.  (App. at 17, ¶¶ 22-23.)  The sale

occurred in Romania in accordance with all applicable laws.  (App. at 18, ¶ 28.)

After the incident rifle left its facilities, Romarm had no further contact or

connection with any subsequent sales, transfers, or distribution of the rifle.  (App.

at 17, ¶ 24.)  Romarm did not export the incident rifle to the United States and had

no involvement in the chain of distribution of the incident rifle after its sale in Romania.  (App. at 17-18, ¶¶ 21, 25-27.)

## SUMMARY OF THE ARGUMENT

The District Court's Order dismissing Plaintiffs' Complaint must be affirmed on appeal, and Plaintiffs' arguments to the contrary are without legal foundation.  Initially, Plaintiffs' Appellate Brief failed to comply with the Federal Rules of Appellate Procedure, and also raised arguments on appeal that were never raised in the District Court.  These facts alone warrant dismissal of Plaintiffs' Appeal.

Substantively, the District Court did not err when it dismissed Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Plaintiffs' argument that a state-owned foreign corporation is automatically subject to personal jurisdiction under the FSIA is incorrect as binding precedent make clear that to establish personal jurisdiction, a plaintiff must plead facts establishing sufficient minimum contacts to satisfy due process considerations.  Quite simply, there are insufficient minimum contacts to establish personal jurisdiction. Plaintiffs' other personal jurisdiction arguments – that Section 13-423(a)(3) of the long-arm statute and/or that the SLA established personal jurisdiction – are not based on any legal precedent.

8

Additionally, the District Court did not abuse its discretion when denying Plaintiffs' motion to conduct personal jurisdictional discovery in this case. As the District Court correctly found, Plaintiffs failed to offer any basis for such discovery other than conclusory statements. Plaintiffs also did not provide a "detailed showing" of what discovery they wished to conduct or what results they believed the discovery would produce.

Furthermore, dismissal of Plaintiffs' Complaint can also be affirmed on different grounds than the one relied on by the District Court. Although the District Court did not reach these issues, dismissal was also warranted for lack of subject matter jurisdiction and because the Complaint failed to state a claim upon which relief may be granted.

## ARGUMENT

### I.   PLAINTIFFS' APPEAL SHOULD BE DISMISSED WITH PREJUDICE FOR FAILING TO COMPLY WITH THE FEDERAL RULES OF APPELLATE PROCEDURE.

Preliminarily, Defendant respectfully submits that Plaintiffs' Appellant Brief must be dismissed for failing to comply with the rules of appellate procedure. As the rules explain, the statement of facts section of brief must have "appropriate references to the record." Fed. R. App. P. at 28(a)(7). Likewise, the argument portion of the brief must contain the "appellant's contentions and the reasons for them, with citation to the authorities and parts of the record on which the appellant

9

relies." Fed. R. App. P. 28(a)(9). "Not surprisingly, the Federal Rules of Appellate Procedure require that appellants, rather than the courts of appeals, ferret out and articulate the record evidence considered material to each legal theory advanced on appeal." Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001). Circuit courts are permitted to dismiss an appeal in its entirety or not consider certain arguments on appeal when the appellant has failed to abide by the rules of appellate procedure. See, e.g., Sky Harbor Air Serv., Inc. v. Reams, No. 11-8004, 2012 U.S. App. LEXIS 14899, at *15 (10th Cir. July 20, 2012) (deeming certain arguments waived "by making mere assertions" and by "not citing any record support").

In this case, much of Plaintiffs' brief contains statements of purported fact without any reference to the record and, alternatively, Plaintiffs cite to documents that were not part of the record below. (See Dkt. No. 1450365, Plts. Brief at p. 3-4.) Plaintiffs cite to internet articles that were not part of the record at the District Court and offer numerous statements without any reference to the pleadings. The issue on appeal concerns a Rule 12 motion to dismiss Plaintiffs' Complaint. As such, Plaintiffs' statement of facts should contain citations and references to the pleadings, but no such references are found. (Ibid.) Plaintiffs were required to "articulate the record evidence considered material to each legal theory advanced on appeal," Conto, 265 F.3d at 81, and have clearly failed to do so. Instead of

10

providing specific references to the record to support their claims of error, Plaintiffs provided conjecture based on nothing more than counsel's unfounded opinions.

## II.    ARGUMENTS THAT ARE RAISED FOR THE FIRST TIME ON APPEAL SHOULD NOT BE CONSIDERED.

Generally, appellate courts will not consider arguments that are raised for the first time on appeal.  See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976). "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." Potter v. District of Columbia, 558 F.3d 542, 550 (D.C. Cir. 2009); NRM Corp. v. Hercules, Inc., 758 F.2d 676, 680 (D.C. Cir. 1985).  In this case, Plaintiffs raised numerous arguments on appeal that were not raised to the District Court and, as such, such arguments should not be considered.

In opposing Romarm's motion to dismiss the complaint in the District Court, Plaintiffs argued that (1) under the FSIA a plaintiff need only establish that subject matter jurisdiction exists and that personal jurisdiction is assumed; (2) personal jurisdiction was established pursuant to section 13-423(a)(3) of the District's long-arm statute; and (3) personal jurisdiction was established based on the SLA. (App. at 27.)   Plaintiffs also argued that jurisdictional discovery was warranted. (App. at 27.)  Plaintiffs' Appellate Brief contains arguments, legal theories, and other issues that go beyond the arguments raised in the District Court.  As such,

these arguments and legal theories should not be considered on appeal as Plaintiffs have not demonstrated an "extraordinary situation," such as an intervening change in the law, which would warrant raising new arguments for the first time on appeal. See, e.g., Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416, 419 (D.C. Cir. 1992).

Plaintiffs' arguments on appeal should be limited to the arguments raised below, and the factual record should be confined to the allegations in Plaintiffs' Complaint. Plaintiffs' attempt to cloud the issues on appeal by inserting extraneous information and new arguments into the briefing should not be permitted.

### III. THE DISTRICT COURT DID NOT ERR WHEN DISMISSING PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION.[1]

#### A.   Standard of Review.

Dismissal for lack of personal jurisdiction is reviewed *de novo*.  FC Inv. Group LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008); Gorman v.

---

[1] Although not raised by Plaintiffs on appeal, and therefore not at issue, it is worth noting that the District Court chose to address the personal jurisdiction issue prior to addressing subject matter jurisdiction.  Binding precedent establishes that there are circumstances when a district court appropriately accords priority to a personal jurisdiction inquiry.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999).  The District Court correctly followed the principle that "there is no unyielding jurisdictional hierarchy."  Second Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521, 523 (D.C. Cir. 2001).  In this instance, the District Court's determination on the personal jurisdiction issue mooted the remaining arguments raised by Defendant.  See Roz Trading Ltd. v. Zeromax Group, Inc., 517 F. Supp. 2d 377, 382 (D.D.C. 2007).

Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002). A plaintiff has the burden of establishing personal jurisdiction over the defendant. See Crane v. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); Reuber v. United States, 787 F.2d 599, 599 (D.C. Cir. 1986). A motion for lack of personal jurisdiction pursuant to Rule 12(b)(2) is based on the factual allegations set forth in the complaint, and the plaintiff must allege specific facts concerning the defendant's connection with the forum. See, e.g., Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. Ibid. Although a plaintiff's complaint should be afforded a liberal reading, the court should not treat all of the plaintiff's allegations as true. Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003). The Court can also receive and weigh affidavits to assist in determining the jurisdictional facts. Ibid.

## B.    Argument.

In their Complaint, the sole basis for personal jurisdiction over Romarm was an allegation that Section 13-423(a)(3) of the District's long-arm statute established specific jurisdiction. (App. at 21.) In opposing the motion to dismiss, Plaintiffs argued that (1) a foreign corporation that is state-owned under the FSIA is automatically subject to personal jurisdiction; (2) Section 13-423(a)(3) of the District's long-arm statute established personal jurisdiction; and (3) the SLA

established specific jurisdiction.  As the District Court correctly concluded, none of these arguments are legally sufficient, and Plaintiffs failed to meet their burden of establishing personal jurisdiction over Romarm.[2]

### 1.     Romarm Does Not Have Sufficient "Minimum Contacts" To Establish Personal Jurisdiction.

Contrary to Plaintiffs' contention, simply because a foreign corporation meets the definition of a "foreign state" under the FSIA, it does not follow that personal jurisdiction is assumed.  As the District Court correctly recognized, binding precedent establishes the fact that a court cannot exercise personal jurisdiction over a state-owned foreign corporation unless the corporation has minimum contacts with the forum.  In this case, Plaintiffs have failed to allege that Romarm has sufficient contacts with the forum to comport with due process considerations.

---

[2] It must be noted that the District Court gave Plaintiffs' Complaint a very broad reading because the only personal jurisdiction allegation in the Complaint is contained in Paragraph 2:  "Personal jurisdiction is established through District of Columbia Code Sec. 13-423(a)(3) in that acts of the defendants caused tortious injury and death in the District of Columbia (District) on March 22, 2010, when one of its assault weapons, a ROMARM [sic], was used to kill J.H. in the District." (App. at 21.)  Nonetheless, the District Court generously assessed additional potential bases for personal jurisdiction in this matter.

14

a.    A Court Cannot Exercise Personal Jurisdiction Over a State-Owned Foreign Corporation Unless the Corporation Has Minimum Contacts With the Forum.

Under the FSIA, a district court has subject matter jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). The Act defines the term "foreign state" expansively as it includes not only foreign sovereigns but also any "political subdivision of a foreign state or instrumentality of a foreign state." Id. § 1603(a). An "agency or instrumentality of a foreign state" includes any foreign corporation "a majority of whose shares . . . [are] owned by a foreign state." Id. § 1603(b). In this instance, no party has disputed that Romarm is considered an "agency or instrumentality of a foreign state" under Section 1603(b) and, as such, meets the definition of a "foreign state" under the FSIA.

In dealing with personal jurisdiction, the FSIA states that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under" § 1603(a) where service has been made under § 1608. See GSS Group Ltd. v. Nat'l Port Auth., 680 F.3d 805, 811 (D.C. Cir. 2012) (citing Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95 (D.C. Cir. 2002)). However, when a state-owned corporation that is operating as an independent entity meets the definition of

15

"foreign state," there is an exception to this rule.  See GSS Group Ltd., 680 F.3d at 816-17.  Under such circumstances, a district court "may not exercise personal jurisdiction over a foreign corporation unless the corporation has 'minimum contacts' with the relevant forum." Ibid.

As such, "government instrumentalities established as separate juridical entities distinct and independent from their sovereign should normally be treated as such" for purposes of a due process analysis.  TMR Energy Group v. State Property Fund of Ukraine, 411 F.3d 296, 301 (D.C. Cir. 2005) (citing First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626-27 (1983)).  Accordingly, there is a presumption of independent status between a state-owned entity and the foreign entity that owns it.  TMR Energy Group, 411 F.3d at 301 (citing Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d 438 (1990)); see also GSS Group Ltd., 680 F.3d at 817.[3]  Unless this presumption is overcome, a court cannot exercise personal jurisdiction over a foreign corporation, even if state-owned, unless minimum contacts with the forum are established.  GSS Group Ltd., 680 F.3d at 816-17.

---

[3] "[When a foreign, state-owned company] does not possess the characteristics of a sovereign nation . . . it functions more like a private corporation than a foreign government for the purposes of a Fifth Amendment analysis.  It therefore may not be haled into an American court without having a sufficient quantum of minimum contacts."  GSS Group Ltd. v. Nat'l Port Auth., 774 F. Supp. 2d 134, 140-41 (D.D.C. 2011), aff'd, 680 F.3d 805 (D.C. Cir. 2012).

In this case, it is undisputed that Romarm is an independent corporation that is owned by Romania.  As the District Court explained, "Romarm is entitled to the presumption of independent status because Romarm has consistently represented that it is a separate entity from the State of Romania, even if it may be state-owned."  (App. at 33.)  Plaintiffs' argument that a state-owned, foreign corporation is automatically subject to personal jurisdiction under the FSIA is misplaced.  See GSS Group Ltd., 680 F.3d at 817.  For example, in GSS Group Ltd., the defendant was a state-owned foreign corporation and was subject to the FSIA, but because the entity was a foreign corporation, it benefitted from a presumption of independent status, and the plaintiff was required to establish sufficient minimum contacts to satisfy due process considerations.  Ibid.  Accordingly, the District Court correctly held that Plaintiff was required to allege that Romarm had sufficient "minimum contacts" in order to justify the exercise of personal jurisdiction over Romarm.

        b.    <u>Plaintiffs Failed to Allege Facts Demonstrating That Romarm Has Sufficient Minimum Contacts to Establish Personal Jurisdiction or to Demonstrate That Exercising Personal Jurisdiction Over Romarm Comports With Notions of Fair Play and Substantial Justice.</u>

Quite simply, Plaintiffs' Complaint contains absolutely no allegations to support a finding of minimum contacts.  As Rule 12(b)(2) establishes, Plaintiffs have the burden of establishing a factual basis for personal jurisdiction over

17

Romarm.  Fed. R. Civ. P. 12(b)(2); see also Crane, 894 F.2d at 456.  Accordingly, Plaintiffs were required to allege *specific facts* connecting Defendant to the forum. Second Amendment Found., 274 F.3d at 524. Due process is only satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice.  Gorman v. Ameritrade Holding Corp., 193 F.3d 506, 509 (D.C. Cir. 2002) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). These "minimum contacts" must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and privileges of its laws" and the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. Asahi Metal Indus. V. Super. Ct. of Cal., 480 U.S. 102, 109 (1987).

In other words, the defendant's conduct and connection with the forum must be such that he should reasonably anticipate being haled into court there.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The quality and nature of the nonresident defendant's contact with the forum must be voluntary and deliberate as opposed to "random, fortuitous, tenuous, and accidental."  Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc., 607 F. Supp. 2d 185, 189 (D.D.C. 2009).  The unilateral acts of

another party or of a third person are insufficient to satisfy due process considerations. See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416-17.

Plaintiffs' allegations in their Complaint fall well short of the above-recounted standard. Plaintiffs' sole allegations to establish personal jurisdiction are that the incident rifle was used by criminals and recovered in the District. (App. at 22.) As the District Court correctly recognized, "[n]owhere in the complaint or any of the briefing does plaintiff suggest that Romarm has 'continuous and systematic' contacts with the District of Columbia." (App. at 37.) Romarm had no control of the product once it was sold in Romania and, tellingly, there are no allegations that Romarm illegally sold the incident rifle. The only allegation is that Romarm's product was ultimately recovered in the District after criminal misuse. There were no allegations that Romarm directed any activities toward the District. In fact, the only allegations regarding the District involve the criminal conduct by others in the transportation and use of a firearm in the District. Moreover, considering firearms could not be sold in the District, Romarm could not reasonably anticipate being haled into Court here. The facts alleged in Plaintiffs' Complaint fail to satisfy the "purposeful availment" standard and, instead are "random, fortuitous, tenuous, and accidental" contacts.

19

To the extent Plaintiffs attempt to distinguish J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011), or rely on the decisions in Delahanty v. Hinckley, 686 F. Supp. 920 (D.D.C. 1986), and Gatewood v. Fiat, S.p.A., 617 F.2d 820 (D.C. Cir. 1979), such arguments are misguided.  Initially, all three cases involved allegations of product liability, which is not an issue in this litigation. Moreover, these cases involved an analysis of specific personal jurisdiction – i.e., where the cause of action arises from the defendant's specific contact with the forum state.  Based on the allegations in the Complaint, Plaintiff's only claim for personal jurisdiction in this case is that one rifle manufactured by Defendant was allegedly used by a criminal in the District.

Furthermore, although Plaintiffs spend considerable effort arguing that the plurality decision in J. McIntyre is not binding precedent, Plaintiffs overlook the fact that Justice Breyer's concurrence also found that there were insufficient contacts to satisfy due process considerations using the established federal precedent.  131 S. Ct at 2791-92.  In J. McIntyre, the foreign corporation's sole connection to the forum was the fact that it had contracted with a distributor to sell its machines to anyone in the United States and that the distributor sold one of the defendant's machines in the forum.  Id. at 2791-92.  Relying on the stream-of-commerce doctrine set forth in the World-Wide Volkswagen and Asahi cases, Justice Breyer held that "[n]one of our precedents finds that a single isolated sale,

even if accompanied by the kind of sales effort here, is sufficient [to establish personal jurisdiction]." Ibid. There were no facts to show a "regular flow" or "regular course" of sales in the forum State and the plaintiff had not otherwise shown that the defendant "delivered its goods in the stream of commerce with the expectation that they will be purchased by users [in the forum]." Id. at 2792 (citing World-Wide Volkswagen, supra, 444 U.S. at 297-98).

In this case, Romarm has absolutely no connection with the District, since the sale of this product occurred in Romania, and the incident rifle was brought into the District illegally by unknown third-parties. There is no evidence that Romarm delivered goods in the stream of commerce with the expectation that such goods would be purchased in the District, and there is no allegation to even suggest that Romarm has continuous and systematic contacts with the forum. If a "single isolated sale" in the forum is insufficient to confer personal jurisdiction, then a single isolated sale outside the forum is certainly an insufficient basis to find jurisdiction in this case.

Under the circumstances, the requisite due process considerations are not satisfied. Indeed, exercising personal jurisdiction over Romarm solely because its non-defective product was illegally transported into, criminally misused, and then recovered in the forum would clearly violate notions of fair play and substantial justice.

## 2. Plaintiffs Cannot Establish Specific Personal Jurisdiction Under Section 13-423(a)(3) of the District's Long-Arm Statute.

Plaintiffs incorrectly argue that personal jurisdiction is proper under Section 13-424(a)(3) of the District's long-arm statute.[4]  Initially, given the allegations in the Complaint (that Romarm is a "foreign state' for purposes of the FSIA), the District's long-arm statute does not appear to be implicated.  See 28 U.S.C. § 1330(b).  Thus, Plaintiffs' arguments regarding the application of the long-arm statute seem to be misplaced.

However, even if the statute were applicable, specific personal jurisdiction under the long-arm statute also requires a plaintiff to establish that the exercise of personal jurisdiction comports with constitutional due process.  Gorman, 923 F.3d at 509.  Thus, if a plaintiff establishes that a prong of the long-arm statute is met, the next step is to assess whether jurisdiction comports with the federal due process requirements.  Ibid.  As already addressed in Argument Section III.1., supra, Plaintiffs have failed to plead sufficient allegations to establish Romarm has sufficient minimum contacts to satisfy due process considerations.

Furthermore, even if the long-arm statute were applicable, Section 13-423(a)(3) (which is the only section alleged to be applicable in Plaintiffs' Complaint) of the long-arm statute would still not establish specific personal

---

[4]  In fact, this is the only basis for personal jurisdiction alleged in Plaintiffs' Complaint.

jurisdiction over Romarm.    Section 13-423(a)(3) states that "[a] District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code § 13-423(a).  "Section 13-423(a) requires that both tortious injury and an act predicate to it take place within the District."  McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300 (D.C. Cir. 1996).  This provision is "a precise and intentionally restricted tort section which stops short of the outer limits of due process and requires that both act and injury occur in the district."  Helmer v. Doletskaya, 393 F.3d 201, 208 (D.C. Cir. 2004).

Plaintiffs' Complaint contains no factual allegations regarding Romarm's connection with the District or that Romarm committed any "act" within the District.  Thus, Section 13-423(a)(3) of the long-arm statute cannot support a finding of personal jurisdiction over Romarm in this case.

### 3.    The SLA Does Not Establish Personal Jurisdiction.

At the District Court, and again on appeal, Plaintiffs argued that the SLA somehow confers personal jurisdiction over Romarm, but there is no legal basis for such a conclusion.  The SLA which took effect on February 29, 1992, states that:

> Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately

23

results from the discharge of the assault weapon or machine gun in the District of Columbia.

D.C. Code § 7-2551.02.   The SLA purports to confer a right of action on individuals to sue for damages arising from bodily injury or death traceable to assault weapons.   Ibid.   The SLA, however, has no provision specifically conferring personal jurisdiction over a defendant based on an alleged violation of the Act.  Ibid.

Indeed, case law demonstrates that simply because an injury is part of a requirement for a tort, it does not follow that section 13-423(a)(3) confers jurisdiction.  See, e.g., McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (holding that even though in a libel action the injury is part of the tort itself, section 13-423(a)(3) does not confer jurisdiction when the tortious activity occurred outside the District); Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217, 220-21 (D.C. Cir. 1986) (holding that a cause of action for libel does not satisfy Section 13-423(a)(3) where the alleged tortious activity occurred in Kentucky).  In other words, although the SLA purports to create a cause of action for injuries from assault weapons that occur in the District, there must still be a basis for personal jurisdiction over the defendant.

As the District Court correctly noted, Plaintiffs appear to "confuse personal jurisdiction with liability."  (App. at 38.)  The SLA does not concern the exercise of personal jurisdiction over a nonresident defendant.  (App. at 39.)  Furthermore,

24

the SLA does not remove Plaintiffs' requirement to demonstrate the minimum contacts necessary to establish personal jurisdiction.  Plaintiffs' reliance on the SLA to establish personal jurisdiction is erroneous.

## IV.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN DENYING PLAINTIFFS' MOTION TO CONDUCT PERSONAL JURISDICTIONAL DISCOVERY.

### A.    Standard of Review.

A denial of jurisdictional discovery is reviewed for an abuse of  discretion. See, e.g., FC Inv. Group LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008); Stewart v. Evans, 351 F.3d 1239, 1245 (D.C. Cir. 2003).

### B.    Argument.

Although discovery should be granted freely, it is appropriately denied when the plaintiff has failed to present facts that could establish jurisdiction.  See, e.g., Caribbean Broad. Sys. Ltd. v. Cable & Wireless, PLC, 148 F.3d 1080, 1089-90 (D.C. Cir. 1988) (affirm the district court's denial of discovery when the plaintiffs did not present sufficient evidence of jurisdiction).  Jurisdictional discovery has been permitted in cases where the plaintiff has alleged more than conclusory jurisdictional facts.  See El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996), abrogated on other grounds by Samatar v. Yousuf, 130 S. Ct. 2278 (2010).  As the D.C. Circuit has explained, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to

25

show that the court has personal jurisdiction over the defendant." <u>Caribbean Broad</u> <u>Sys.</u>, 148 F.3d at 1090.   The plaintiff seeking jurisdictional discovery is also required to make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce."   <u>Atlantigas Corp. v.</u> <u>Nisource, Inc.</u>, 290 F. Supp. 2d 34, 53 (D.D.C. 2003).

For example, in <u>Caribbean Broad. Systems</u>, the Court of Appeals held that the district court did not abuse its discretion in denying the plaintiff jurisdictional discovery before dismissing the Complaint on a 12(b)(2) motion because, "[plaintiff] alleged absolutely nothing, upon either information or belief, to indicate that a court in the District of Columbia might constitutionally assert jurisdiction over [defendant]." 148 F.3d at 1089.  The Court of Appeals went on to affirm the denial of discovery stating, "[I]n light of [defendant]'s uncontested affidavit … the court was justified in denying further discovery." <u>Id.</u> at 1090.

As the District Court correctly ruled, Plaintiffs failed to meet the foregoing standards.  In requesting this discovery, Plaintiffs argued that they were entitled to discovery about "the penetration of the defendant and its armament into the United States market" and "what [Romarm] knows about the theft of its weapons" in the United States.  (App. at 41.)  The District Court exercised its discretion and found that such statements did not constitute a "detailed showing" of what discovery plaintiffs sought to conduct and what the discovery would produce.   (<u>Ibid.</u>)

Tellingly, these statements do not relate to any legitimate and purposeful contacts with the forum.  Plaintiffs raised no other arguments in the District Court regarding the need for jurisdictional discovery.

In their Complaint, Plaintiffs base personal jurisdiction – as well as liability – on the sole fact that a rifle manufactured by Romarm (in 1970) was recovered in the District.  This fact does not establish personal jurisdiction, and absent any other allegations, the District Court was correct to conclude that Plaintiffs have not established a good faith belief that the requested discovery will enable them to show that there is personal jurisdiction over Romarm.

## V.  THE DISMISSAL OF PLAINTIFFS' COMPLAINT CAN ALSO BE AFFIRMED ON DIFFERENT GROUNDS THAN THE ONE RELIED ON BY THE DISTRICT COURT.

### A.  <u>Standard.</u>

The Court of Appeals has *de novo* review of a District Court's decision to grant a motion to dismiss.  See <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Furthermore, an appellate court may affirm a lower court's decision on a different ground than the one relied on by the lower court. <u>See, e.g.,</u> <u>Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs</u>, 417 F.3d 1272, 1281 (D.C. Cir. 2005); <u>Tymshare, Inc. v. Covell</u>, 727 F.2d 1145, 1150 (D.C. Cir. 1984) ("In this appeal, appellees sought to justify the judgment below upon a

ground argued but not relied upon by the opinion of the district court.  We may of

course sustain on such a ground.").

> **B.**     **Argument.**

Since the District Court found that Plaintiffs' Complaint must be dismissed

for lack of personal jurisdiction, Romarm's additional arguments were not

addressed as they were considered moot.   Nonetheless, Plaintiffs' Complaint

would have also been properly dismissed for lack of subject matter jurisdiction and

for a failure to state a claim upon which relief may be granted.

> ### 1. Plaintiffs' Complaint Can Also Be Dismissed for Lack of Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction, with the ability only to hear

cases entrusted to them by a grant of power contained either in the Constitution or

in an act of Congress.   See, e.g., Hunter v. District of Columbia, 384 F. Supp. 2d

257, 259 (D.D.C. 2005); Srour v. Barnes, 670 F. Supp. 18, 20 (D.D.C. 1987).  On a

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the

plaintiff bears the burden of establishing that the court has jurisdiction.  See Brady

Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C.

2004).

While a court must generally accept the allegations in a complaint as true

and construe all inferences in a plaintiff's favor, where the motion to dismiss is

based on a claim of foreign sovereign immunity, which provides protection from

suit and not merely a defense to liability, "the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case." Jungquist v. Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997) (internal citations omitted); see also Kilburn v. Socialist People's Libyan Arab Republic, 376 F.3d 1123, 1131 (D.C. Cir. 2004). "[W]hen a foreign state defendant raises a dispute over the factual basis of the court's subject matter jurisdiction under the FSIA, the trial court is required to go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling on the motion to dismiss." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.C. Cir. 2002).

Since Romarm is considered a "foreign state" for purposes of the FSIA, even if there was personal jurisdiction, Romarm was presumptively immune from subject matter jurisdiction under the FSIA. 28 U.S.C. §§ 1603(a)-(b), 1604. Accordingly, Plaintiffs had the burden to show that one of the delineated exceptions to the FSIA applies. See Gen. Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1382 (8th Cir. 1993). If Plaintiffs failed to establish that one of the exceptions to the FSIA applies, their Complaint should be dismissed for lack of subject matter jurisdiction. Ibid.

In their Complaint, Plaintiffs alleged that "[s]ubject matter jurisdiction in this court is founded on the Foreign Sovereign Immunity Act (FSIA) 28 U.S.C.

Sec. 1605(a)(2), which is an exception to immunity based on the commercial activity of a state entity occurring within the United States." (App. at 22.) Preliminarily, Plaintiffs failed to provide any factual allegations to support this exception. Although a court must accept as true all the factual allegations in a complaint, it does not accept mere conclusory statements. See, e.g., Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Accordingly, the lack of factual allegations to support Plaintiffs' subject matter jurisdiction allegations would be dispositive of this issue.

Even ignoring the deficient pleadings, Plaintiffs failed to articulate any legitimate basis for claiming that their allegations satisfy the "commercial activities" exception to the FSIA as described in 28 U.S.C. § 1605(a)(2). Section 1605(a)(2) states that a foreign state shall not be immune from jurisdiction when

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Ibid. Initially, Romarm does not carry on any commercial activity in the United States. Romarm manufactures firearms in Romania and all sales occur in Romania. (App. at 13-16.) Romarm did not export the rifle to the United States; had no control over any subsequent sales or transfers; and had no connection to the sale or the chain of distribution of the rifle upon entering the United States. (App.

30

at 14-16.)  Indeed, Plaintiffs' Complaint contained no factual allegations related to Romarm's purported "commercial activity" in the United States.

Moreover, even if Romarm carried on commercial activity in the United States, case law demonstrates that in order for this exception to apply, Plaintiffs' cause of action must "arise from" the alleged commercial activity.  See, e.g., Fed. Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270, 1272 (3d Cir. 1993), cert. denied, 511 U.S. 1107 (1994); Gould, Inc. v. Mitsui Mining & Smelting Co., 947 F.2d 218, 220 (6th Cir, 1991), cert. denied, 503 U.S. 978 (1992).  Therefore, at a minimum, the language "based upon" in the FSIA requires a causal connection. Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 390 (2d Cir. 2000), cert. denied, 532 U.S. 904 (2001) ("'[B]ased upon' requires a degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements.").  Here, Plaintiffs' cause of action did not "arise from" Romarm's manufacture of the incident rifle; rather, it arose from a third-party's unlawful use of the rifle in Washington, D.C.  Indeed, Romarm had no control over subsequent sales or transfers of the rifle.  Therefore, the cause of action in this case did not arise from any alleged commercial activity by Romarm.

Finally, although Plaintiffs failed to argue to the District Court that the third prong to the commercial activity exception to the FSIA was applicable (that their

action is based upon an act outside the United States in connection with a commercial activity elsewhere that causes a direct effect in the United States), Plaintiffs' allegations made clear that the third prong of the commercial activities exception cannot support subject matter jurisdiction.  This prong requires any alleged foreign commercial activity to have a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2); see also Filus v. Lot Polish Airlines, 907 F.2d 1328, 1333 (2d Cir. 1990) (holding that the failure of a foreign manufacturer to warn of alleged defects in its products does not constitute an act performed in the United States in connection with commercial activity of a foreign state elsewhere within meaning of 28 U.S.C. § 1605(a)(2)).  In this case, there was no direct effect in the United States.  Romarm had no control over where the incident rifle was sold or transferred upon entering the United States, and there is no allegation as to how the rifle came to be in Washington, D.C.  The fact that the rifle was unilaterally and illegally brought into the District by a third party is clearly insufficient to constitute a "direct effect" in the United States.  Absent some allegation linking Romarm's alleged commercial activities with the incident rifle ultimately arriving in the District, the commercial activities exception to the FSIA is inapplicable.

Accordingly, the District Court's order granting Romarm's motion to dismiss could be affirmed pursuant to Rule 12(b)(1).

**2. Plaintiffs' Complaint Can Also Be Dismissed for a Failure to State a Claim Upon Which Relief May Be Granted.**

Rule 12(b)(6) allows dismissal of a complaint if the plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not necessary to withstand a motion to dismiss, in order to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553 (2007). In other words, although there is no "probability requirement" at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Id. at 553-54. The facts alleged in a complaint must be enough to raise a right to relief above the speculative level or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 555.

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). While the complaint is to be construed liberally in the plaintiff's favor, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the

33

Court accept plaintiff's legal conclusions." <u>Dorsey v. Am. Express Co.</u>, 499 F.

Supp. 2d 1, 3 (D.D.C. 2007).

In this case, Plaintiffs' Complaint would also be barred by the statute of

limitations. As Plaintiffs stated in their Complaint, "[t]his action for wrongful

death of J.H. is brought by Plaintiffs, Normal Williams and Diane Howe, as Legal

Representatives of their son."[5]   (App. at 21-22.)   Further, according to the

Complaint, Plaintiffs' decedent was killed on <u>March 22, 2010</u>. (App. at 21.) At

the time this lawsuit was commenced (March 20, 2012), Section 16-2702 of the

District of Columbia Official Code stated that a wrongful death action "shall be

brought by and in the name of the personal representative of the deceased person

and within **one year** after the death of the person injured." D.C. Code § 16-2702.

This wrongful death action was not commenced until March 20, 2012, which is

---

[5] Although Plaintiffs' Complaint referenced the survivor statute, there are no factual allegations within the Complaint to support such a claim. <u>See, e.g.</u>, <u>Powers-Bunce v. District of Columbia</u>, 479 F. Supp. 2d 146, 149 (D.D.C. 2007) (dismissing plaintiff's survival action because the complaint failed to state any such claim). Indeed, any claim under the survival act must be dismissed as Plaintiffs' Complaint only alleges damages suffered by the plaintiffs and not losses of the decedent. <u>Saunders v. Air Fl., Inc.</u>, 558 F. Supp. 1233, 1235 (D.D.C. 1983) ("[A]s plaintiffs claim only damages suffered by them rather than losses of the decedent, they do not allege damages which are the proper subject of a survival action.").

almost two (2) years after the date of J.H.'s death.  Thus, Plaintiffs' Complaint could also appropriately be barred pursuant to the applicable statute of limitations.[6]

Tellingly, Plaintiffs never opposed this argument in the District Court, which is in-and-of-itself a sufficient basis to dismiss the Complaint pursuant to Rule 12(b)(6).  See, e.g., Nails v. England, 311 F. Supp. 2d 116, 124, 126 (D.D.C. 2004) ("Because plaintiff has not opposed defendant's motion to dismiss with respect to her retaliation claims in Counts I and II, defendant's motion to dismiss will be granted.").  Accordingly, even if Plaintiffs were able to establish personal jurisdiction and subject matter jurisdiction over Defendant, which they cannot, Plaintiffs' claims should still be dismissed pursuant to Rule 12(b)(6) as the applicable statute of limitations expired prior to the commencement of this action.  As such, the District Court's order dismissing Plaintiffs' Complaint should be affirmed.

---

[6] Any contention that the "Wrongful Death Temporary Act of 2012" somehow saves their claim is untenable.  The emergency act was approved and signed by the Mayor on March 30, 2012.  (See Add., D.C. Act 19-338.)  The emergency act specified that it "shall take effect following approval by the Mayor."  (Ibid.)  Thus, it cannot be debated that at the time Plaintiffs commenced this lawsuit, the emergency act had not yet been enacted and the statute of limitations for wrongful death actions was one (1) year.  Furthermore, Wrongful Death Emergency Act extending the statute of limitations to two years (See Add., D.C. Act 19-350) was not approved by the Mayor until April 29, 2012, and specified that it "shall take effect following approval by the Mayor . . . a 30-day Congressional review . . . and publication in the District of Columbia Register."  Ibid.  Accordingly, the earliest this act could have been effective was May 29, 2012, over two (2) months after this action was commenced.  Romarm also reserves the right to challenge the constitutionality of this new statute of limitations.

## <u>CONCLUSION</u>

Based on the foregoing arguments, the decision of the District Court to dismiss Plaintiffs' Complaint must be affirmed.

Dated:          September 5, 2013
                Florham Park, New Jersey


                                    Respectfully submitted,

                                    By:  s/ James W. Porter, III
                                         James W. Porter, III, Esq.
                                         BRADLEY ARANT
                                         BOULT CUMMINGS LLP
                                         1615 L Street, N.W.
                                         Suite 1360
                                         Washington, DC  20036
                                         (202) 719-8232
                                         (202) 719-8332 facsimile
                                         jporter@babc.com

                                         and

                                    By:  s/ Jeffrey M. Malsch
                                         Jeffrey M. Malsch, Esq.
                                         Anthony M. Pisciotti, Esq.
                                         PISCIOTTI, MALSCH & BUCKLEY, P.C.
                                         30 Columbia Turnpike, Suite 205
                                         Florham Park, NJ 07932
                                         (973) 245-8100
                                         (973) 245-8101 facsimile
                                         jmalsch@pmblegalfirm.com
                                         apisciotti@pmblegalfirm.com

                                         ATTORNEYS    FOR    DEFENDANT-
                                         APPELLEE   NATIONAL   COMPANY
                                         ROMARM S.A. I/S/H/A ROMARM

## <u>CERTIFICATE OF COMPLIANCE</u>

In reliance upon the word count feature of the word processing system used to prepare this brief, Microsoft Word 2003, the undersigned counsel certifies that the foregoing Brief of Defendant-Appellee complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,742 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

The undersigned counsel further certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.

Dated:        September 5, 2013
              Florham Park, New Jersey

                         Respectfully submitted,

                         By:  s/ James W. Porter, III
                              James W. Porter, III, Esq.
                              BRADLEY ARANT
                              BOULT CUMMINGS LLP
                              1615 L Street, N.W.
                              Suite 1360
                              Washington, DC  20036
                              (202) 719-8232
                              (202) 719-8332 facsimile
                              jporter@babc.com

and

By:  s/ Jeffrey M. Malsch
  Jeffrey M. Malsch, Esq.
  Anthony M. Pisciotti, Esq.
  PISCIOTTI, MALSCH & BUCKLEY, P.C.
  30 Columbia Turnpike, Suite 205
  Florham Park, NJ 07932
  (973) 245-8100
  (973) 245-8101 facsimile
  jmalsch@pmblegalfirm.com
  apisciotti@pmblegalfirm.com

  ATTORNEYS FOR DEFENDANT-
  APPELLEE NATIONAL COMPANY
  ROMARM S.A. I/S/H/A ROMARM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, being duly sworn according to law and being over the age of eighteen (18), upon my oath depose and say that on September 5, 2013, the foregoing Brief of Defendant-Appellee was electronically filed with the Clerk of the Court using the CM/ECF System, which will serve, via email notice of such filing, to the following counsel registered as CM/ECF users:

Daniel Wemhoff, Esq.
LAW OFFICE OF DANIEL WEMHOFF
1201 South Courthouse Rd., Suite 115
Arlington, Virginia  22204-6205
(703) 538-9117
Email: danwem@yahoo.com

A courtesy copy has also been mailed to the above-listed counsel, and eight (8) paper copies have been sent via hand-delivery to the Court.

Dated:        September 5, 2013
                 Florham Park, New Jersey


                          By:  s/ Jeffrey M. Malsch
                               Jeffrey M. Malsch, Esq.
                               jmalsch@pmblegalfirm.com

                               ATTORNEYS    FOR    DEFENDANT-
                               APPELLEE    NATIONAL    COMPANY
                               ROMARM S.A. I/S/H/A ROMARM

## <u>ADDENDUM</u>

28 U.S.C. § 1330 ................................................................................ A-1

28 U.S.C. § 1602, <u>et seq.</u> ................................................................ A-2

D.C. Code § 7-2551.01, <u>et seq.</u> ...................................................... A-15

D.C. Code § 13-423 ......................................................................... A-20

D.C. Code § 16-2702 ....................................................................... A-22

D.C. Act 19-338 ............................................................................... A-23

D.C. Act 19-350 ............................................................................... A-25

**28 USCS § 1330**
Current through PL 113-31, approved 8/9/13

---

**§ 1330. Actions against foreign states**

---

- (a)  The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title [28 USCS § 1603(a)] as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title [28 USCS §§ 1605-1607] or under any applicable international agreement.
- (b)  Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title [28 USCS § 1608].
- (c)  For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title [28 USCS §§ 1605-1607].

---

**History**

---

(Added Oct. 21, 1976,P.L. 94-583, § 2(a), 90 Stat. 2891.)

**28 USCS § 1602**
Current through PL 113-31, approved 8/9/13

### § 1602. Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter [28 USCS §§ 1602 et seq.].

### History

(Added Oct. 21, 1976,P.L. 94-583, § 4(a), 90 Stat. 2892.)

### Notes

**Effective date of section:**

  This section took effect ninety days after enactment, pursuant to § 8 of Act Oct. 21, 1976, P.L. 94-583, which appears as a note to this section.

**Short titles:**

  **Act Oct. 21, 1976, P.L. 94-583, § 1, 90 Stat. 2891, provided: "This Act may be cited as the 'Foreign Sovereign Immunities Act of 1976'." For full classification of this Act, consult USCS Tables volumes.**

**Other provisions:**

  **Effective date of Act Oct. 21, 1976.** Act Oct. 21, 1976, P.L. 94-583, § 8, 90 Stat. 2898, provided: "This Act [adding 28 USCS §§ 1330, 1602-1611, and amending 28 USCS §§ 1332,1391, 1441] shall take effect ninety days after the date

A-2

of its enactment."

   Act Oct. 21, 1976; separability. Act Oct. 21, 1976, P.L. 94-583, § 7, 90 Stat. 2898, provided: "If any provision of this Act [28 USCS §§ 1330, 1602-1611, and amendments to 28 USCS §§ 1332, 1391, 1441] or the application thereof to any foreign state is held invalid, the invalidity does not affect other provisions or applications of the Act [28 USCS §§ 1330, 1602-1611, and amendments to 28 USCS §§ 1332, 1391, 1441] which can be given effect without the invalid provision or application, and to this end the provisions of this Act [28 USCS §§ 1330, 1602-1611, and amendments to 28 USCS §§ 1332, 1391, 1441] are severable.".

## 28 USCS § 1603
Current through PL 113-31, approved 8/9/13

### § 1603. Definitions

- For purposes of this chapter [28 USCS §§ 1602 et seq.]--
  - (a)  A "foreign state", except as used in section 1608 of this title [28 USCS § 1608], includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
  - (b)  An "agency or instrumentality of a foreign state" means any entity--
    - (1)  which is a separate legal person, corporate or otherwise, and
    - (2)  which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
    - (3)  which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title [28 USCS § 1332(c) and (e)] nor created under the laws of any third country.
  - (c)  The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.
  - (d)  A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
  - (e)  A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

### History

(Added Oct. 21, 1976,P.L. 94-583, § 4(a), 90 Stat. 2892.)
(As amended Feb. 18, 2005,P.L. 109-2, § 4(b)(2), 119 Stat. 12.)

A-4

---

**Notes**

---

**Effective date of section:**

This section took effect ninety days after enactment, pursuant to § 8 of Act Oct. 21, 1976, P.L. 94-583, which appears as 28 USCS § 1602 note.

**Amendments:**

**2005 .** Act Feb. 18, 2005 (applicable to any civil action commenced on or after enactment, as provided by § 9 of such Act, which appears as 28 USCS § 1332 note), in subsec. (b)(3), substituted "(e)" for "(d)".

**28 USCS § 1604**
Current through PL 113-31, approved 8/9/13

## § 1604. Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act [enacted Oct. 21, 1976] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605-1607 of this chapter [28 USCS §§ 1605-1607].

## History

(Added Oct. 21, 1976,P.L. 94-583, § 4(a), 90 Stat. 2892.)

## Notes

**Effective date of section:**

This section took effect ninety days after enactment, pursuant to § 8 of Act Oct. 21, 1976, P.L. 94-583, which appears as 28 USCS § 1602 note.

**28 USCS § 1605**
Current through PL 113-31, approved 8/9/13

---

**§ 1605. General exceptions to the jurisdictional immunity of a foreign state**

---

- (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
  - (1)  in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
  - (2)  in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
  - (3)  in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;
  - (4)  in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;
  - (5)  not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--
    - (A)  any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
    - (B)  any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

- ○ (6)  in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607 [28 USCS § 1607], or (D) paragraph (1) of this subsection is otherwise applicable.
  - ○ (7)  [Deleted]
- (b)  A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided,* That--
  - ○ (1)  notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and
  - ○ (2)  notice to the foreign state of the commencement of suit as provided in section 1608 of this title [28 USCS § 1608] is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.
- (c)  Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered

A-8

by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

- (d)  A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 [46 USCS §§ 31301 et seq.] and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.
- (e), (f)  [Repealed]
- (g)  Limitation on discovery.
  - (1)  In general.
    - (A)  Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604 [28 USCS § 1604], but for section 1605A [28 USCS § 1605A], the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.
    - (B)  A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.
  - (2)  Sunset.
    - (A)  Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.
    - (B)  After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order

A-9

for discovery on the United States that the court finds a substantial likelihood would--

- ▪ (i) create a serious threat of death or serious bodily injury to any person;
- ▪ (ii) adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or
- ▪ (iii) obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

- o (3) Evaluation of evidence. The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.
- o (4) Bar on motions to dismiss. A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.
- o (5) Construction. Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

## History

(Added Oct. 21, 1976, P.L. 94-583, § 4(a), 90 Stat. 2892; Nov. 9, 1988, P.L. 100-640, § 1, 102 Stat. 3333; Nov. 16, 1988, P.L. 100-669, § 2, 102 Stat. 3969; Dec. 1, 1990, P.L. 101-650, Title III, § 325(b)(8), 104 Stat. 5121; April 24, 1996, P.L. 104-132, Title II, Subtitle B, § 221(a), 110 Stat. 1241; April 25, 1997, P.L. 105-11, 111 Stat. 22; Nov. 28, 2001, P.L. 107-77, Title VI, § 626(c), 115 Stat. 803; Jan. 10, 2002, P.L. 107-117, Div B, Ch. 2, § 208, 115 Stat. 2299.)

(As amended Oct. 6, 2006, P.L. 109-304, § 17(f)(2), 120 Stat. 1708; Jan. 28, 2008, P.L. 110-181, Div A, Title X, Subtitle F, § 1083(b)(1), 122 Stat. 341.)

## Notes

**Effective date of section:**

This section took effect ninety days after enactment, pursuant to § 8 of Act Oct. 21, 1976, P.L. 94-583, which appears as 28 USCS § 1602 note.

**Amendments:**

**1988.** Act Nov. 9, 1988 (applicable as provided in § 3 of such Act, which appears as a note to this section), in subsec. (b), in para. (1), substituted "and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and" for "but such notice shall not be deemed to have been delivered, nor may it thereafter be delivered, if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit--unless the party was unaware that the vessel or cargo of a foreign state was involved, in which event the service of process of arrest shall be deemed to constitute valid delivery of such notice; and", in para. (2), substituted "paragraph (1) of this subsection" for "subsection (b)(1) of this section", and deleted the concluding matter, which read "Whenever notice is delivered under subsection (b)(1) of this section, the maritime lien shall thereafter be deemed to be an in personam claim against the foreign state which at that time owns the vessel or cargo involved: Provided, that a court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose, such value to be determined as of the time notice is served under subsection (b)(1) of this section."; and added subsecs. (c) and (d).

Act Nov. 16, 1988, in subsec. (a), in para. (4), deleted "or" at the end thereof, in para. (5)(B), substituted "; or" for a concluding period, and added para. (6).

**1990.** Act Dec. 1, 1990, in subsec. (a)(6), substituted "state" for "State".

**1996.** Act April 24, 1996 (applicable to any cause of action arising before, on, or after enactment, as provided by § 221(c) of such Act, which appears as a note to this section), in subsec. (a), in para. (5)(B), deleted "or" following the concluding semicolon, in para. (6), substituted "; or" for a concluding period, and added para. (7); and added subsecs. (e)-(g).

**1997.** Act April 25, 1997 (effective with respect to any cause of action arising, before, on, or after enactment), in subsec. (a)(7)(B)(ii), substituted "neither the claimant nor the victim was" for "the claimant or victim was not".

**2001.** Act Nov. 28, 2001, in subsec. (a)(7)(A), inserted "or the act is related to Case

Number 1:00CV03110(ESG) in the United States District Court for the District of Columbia".

**2002.** Act Jan. 10, 2002, in subsec. (a)(7)(A), substituted "1:00CV03110(EGS)" for "1:00CV03110(ESG)".

**2006 .** Act Oct. 6, 2006, in subsec. (d), substituted "section 31301 of title 46" for "the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following)", and substituted "chapter 313 of title 46" for "that Act".

**2008.** Act Jan. 28, 2008, in subsec. (a), in para. (5)(B), added "or" after the semicolon, in para. (6)(D), substituted the concluding period for "; or", and deleted para. (7), which read:

"(7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph--

"(A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; and

"(B) even if the foreign state is or was so designated, if--

"(i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

"(ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.";

deleted subsecs. (e) and (f), which read:

"(e) For purposes of paragraph (7) of subsection (a)--

"(1) the terms 'torture' and 'extrajudicial killing' have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991;

"(2) the term 'hostage taking' has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages; and

"(3) the term 'aircraft sabotage' has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation.

"(f) No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.";

and, in subsec. (g)(1)(A), substituted "but for section 1605A" for "but for subsection (a)(7)".

**Other provisions:**

**Application of Nov. 9, 1988 amendments.** Act Nov. 9, 1988, P.L. 100-640, § 3, 102 Stat. 3333, provided: "The amendments made by this Act [amending subsec. (b) and adding subsecs. (c) and (d) to this section, and adding subsec. (e) to 28 USCS § 1610] shall apply to actions commenced on or after the date of the enactment of this Act.".

**Application of April 26, 1996 amendments.** Act April 24, 1996, P.L. 104-132, Title II, Subtitle B, § 221(c), 110 Stat. 1243, provides: "The amendments made by this subtitle [amending 28 USCS §§ 1605, 1610(a), (b)(2)] shall apply to any cause of action arising before, on, or after the date of the enactment of this Act.".

**Liability of agents of state sponsors of terrorism to U.S. nationals.** Act Sept. 30, 1996, P.L. 104-208, Div A, Title I, § 101(c) [Title V, § 589], 110 Stat. 3009-

172, provides:

"(a) An official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [50 USCS Appx § 2405(j)] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code, for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

"(b) Provisions related to statute of limitations and limitations on discovery that would apply to an action brought under 28 U.S.C. 1605(f) and (g) shall also apply to actions brought under this section. No action shall be maintained under this action if an official, employee, or agent of the United States, while acting within the scope of his or her office, employment, or agency would not be liable for such acts if carried out within the United States.".

**Application of April 25, 1997 amendment.** Act April 25, 1997, P.L. 105-11, 111 Stat. 22, provides that the amendment made by such Act to subsec. (a)(7)(B)(ii) of this section is effective with respect to any cause of action arising, before, on, or after the date of the enactment of such Act.

## D.C. Code § 7-2551.01
CURRENT THROUGH APRIL 1, 2013, AND THROUGH D.C. ACT 19-658.

### § 7-2551.01. Definitions

- For the purposes of this unit, the term:
  - (1) "Assault weapon" shall have the same meaning as provided in § 7-2501.01(3A).
  - (2) "Handgun" means a firearm with a barrel less than 12 inches in length at the time of manufacture.
  - (3) "Dealer" and "importer" shall have the same meaning as in 18 U.S.C. § 921.
  - (4) "Machine gun" shall have the same meaning as in paragraph (10) of § 7-2501.01.
  - (5) "Manufacturer" means any person in business to manufacture or assemble a firearm or ammunition for sale or distribution.
  - (6) "Law enforcement agency" means a federal, state, or local law enforcement agency, state militia, or an agency of the United States government.
  - (7) "Law enforcement officer" means any officer or agent of an agency defined in paragraph (6) of this section who is authorized to use a handgun or machine gun in the course of his or her work.

### History

Mar. 6, 1991, D.C. Law 8-263, § 3, 37 DCR 8482; Mar. 31, 2009, D.C. Law 17-372, § 4, 56 DCR 1365.

### Notes

PRIOR CODIFICATIONS. --1981 Ed., § 6-2391.

**EFFECT OF AMENDMENTS. --**

D.C. Law 17-372 rewrote par. (1).

TEMPORARY AMENDMENT OF SECTION. --Repeal and revival of Law 8-263: D.C. Law 8-263 was temporarily repealed by Emergency Act 9-1, § 2, the Assault Weapon Manufacturing Strict Liability Act of 1990 Emergency Repealer

Act of 1991 (D.C. Act 9-1, February 15, 1991, 38 DCR 1457). Section 2 of D.C. Law 9-3 temporarily repealed D.C. Law 8-263. Section 3(b) of D.C. Law 9-3 provided that the act shall expire on the 225th day of its having taken effect or upon the effective date of the Assault Weapon Manufacturing Strict Liability Act of 1990 Repealer Act of 1991, whichever occurs first.

**EMERGENCY LEGISLATION. --**

For temporary (90 day) amendment of section, see § 4 of Firearms Registration Emergency Amendment Act of 2008 (D.C. Act 17-651, January 6, 2009, 56 DCR 911).

**LEGISLATIVE HISTORY OF LAW 8-263. --**

Law 8-263, the "Assault Weapon Manufacturing Strict Liability Act of 1990," was introduced in Council and assigned Bill No. 8-132, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on June 27, 1989, and December 11, 1990, respectively. Signed by the Mayor on December 17, 1990, it was assigned Act No. 8-289 and transmitted to both Houses of Congress for its review. D.C. Law 8-263 became effective March 6, 1991.

**LEGISLATIVE HISTORY OF LAW 17-372. --**

For Law 17-372, see notes following § 7-2501.01.

**EFFECTIVE DATES. --**

Pursuant to the Court's holding in Bliley v. Kelly, 23 F.3d 507 (D.C.Cir.1994), the Congressional review period for the Assault Weapon Manufacturing Strict Liability Act of 1990, began to run on November 19, 1991, and the act took effect on February 29, 1992.

**EDITOR'S NOTES. --**

Application of Law 8-263: Section 6 of D.C. Law 8-263, as amended by § 3(b) of D.C. Law 10-194, provided that the act shall apply only to the discharge of an assault weapon that is manufactured, imported, or distributed after Mar. 6, 1991, and to the discharge of a machine gun that is manufactured, imported, or distributed after Oct. 7, 1994.

Repeal of Act 9-32: D.C. Act 9-32, the Assault Weapon Manufacturing Strict Liability Act of 1990 Repealer Act of 1991, May 17, 1991, 38 DCR 3380, was repealed by Referendum 006, certified by the Board of Elections and Ethics November 18, 1991.

Findings of Council: Section 2 of D.C. Law 8-263 provided findings of Council.

## D.C. Code § 7-2551.02
## CURRENT THROUGH APRIL 1, 2013, AND THROUGH D.C. ACT 19-658.

### § 7-2551.02. Liability

Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately results from the discharge of the assault weapon or machine gun in the District of Columbia.

### History

Mar. 6, 1991, D.C. Law 8-263, § 4, 37 DCR 8482; Oct. 7, 1994, D.C. Law 10-194, § 3(a), 41 DCR 4283.

### Notes

PRIOR CODIFICATIONS. --1981 Ed., § 6-2392.

**LEGISLATIVE HISTORY OF LAW 8-263. --**

For legislative history of D.C. Law 8-263, see Historical and Statutory Notes following § 7-2551.01.

**LEGISLATIVE HISTORY OF LAW 10-194. --**

Law 10-194, the "Repeat Offender Life Without Parole Amendment Act of 1994," was introduced in Council and assigned Bill No. 10-478, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on June 7, 1994, and June 21, 1994, respectively. Signed by the Mayor on June 21, 1994, it was assigned Act No. 10-254 and transmitted to both Houses of Congress for its review. D.C. Law 10-194 became effective on October 7, 1994.

**EFFECTIVE DATES. --**

Pursuant to the Court's holding in Bliley v. Kelly, 23 F.3d 507 (D.C.Cir.1994), the Congressional review period for the Assault Weapon Manufacturing Strict

Liability Act of 1990, began to run on November 19, 1991, and the act took effect on February 29, 1992.

**EDITOR'S NOTES. --**

Application of Law 8-263: See Historical and Statutory Notes following § 7-2551.01.

## D.C. Code § 13-423
## CURRENT THROUGH APRIL 1, 2013, AND THROUGH D.C. ACT 19-658.

### § 13-423. Personal jurisdiction based upon conduct

- (a)  A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
  - (1)  transacting any business in the District of Columbia;
  - (2)  contracting to supply services in the District of Columbia;
  - (3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
  - (4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
  - (5)  having an interest in, using, or possessing real property in the District of Columbia;
  - (6)  contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
  - (7)  marital or parent and child relationship in the District of Columbia if:
    - (A)  the plaintiff resides in the District of Columbia at the time the suit is filed;
    - (B)  such person is personally served with process; and
    - (C)  in the case of a claim arising from a marital relationship:
      - (i)  the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation, or
      - (ii)  the cause of action to pay spousal support arose under the laws of the District of Columbia or under an agreement executed by the parties in the District of Columbia; or
    - (D)  in the case of a claim affecting the parent and child relationship:
      - (i)  the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;
      - (ii)  the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or

A-20

- (iii)  such person has resided with the child in the District of Columbia.
  - (E)  Notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.
- (b)  When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

## History

July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a); Mar. 10, 1983, D.C. Law 4-200, § 4, 30 DCR 125.

## Notes

**LEGISLATIVE HISTORY OF LAW 4-200. --**

Law 4-200, the "District of Columbia Adoption of the Uniform Child Custody Jurisdiction and Marital or Parent and Child Long-Arm Jurisdiction Amendments Act of 1982," was introduced in Council and assigned Bill No. 4-237, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on November 16, 1982, and December 14, 1982, respectively. Signed by the Mayor on December 28, 1982, it was assigned Act No. 4-284 and transmitted to both Houses of Congress for its review.

## D.C. Code § 16-2702
CURRENT THROUGH APRIL 1, 2013, AND THROUGH D.C. ACT 19-658.

### § 16-2702. Party plaintiff; statute of limitations

An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person, and within 2 years after the death of the person injured.

### History

Dec. 23, 1963, 77 Stat. 596, Pub. L. 88-241, § 1; Oct. 22, 2012, D.C. Law 19-177, § 3, 59 DCR 9353.

### Notes

**EFFECT OF AMENDMENTS. --**
The 2012 amendment by D.C. Law 19-177 substituted "2 years" for "one year."

TEMPORARY AMENDMENT OF SECTION. --Section 2 of D.C. Law 19-147 substituted "2 years" for "one year".

   Section 4(b) of D.C. Law 19-147 provided that the act shall expire after 225 days of its having taken effect.

**EMERGENCY LEGISLATION. --**
For temporary (90 day) amendment of section, see § 2 of Wrongful Death Emergency Act of 2012 (D.C. Act 19-338, March 30, 2012, 59 DCR 2567).

   For temporary (90 day) amendment of section, see § 2 of the Wrongful Death Congressional Review Emergency Act of 2012 (D.C. Act 19-390, July 9, 2012, 59 DCR 8499).

**LEGISLATIVE HISTORY OF LAW 19-177. --**
Law 19-177, the "Wrongful Death Act of 2012," was introduced in Council and assigned Bill No. 19-717. The Bill was adopted on first and second readings on June 26, 2012, and July 10, 2012, respectively. Signed by the Mayor on July 25, 2012, it was assigned Act No. 19-416 and transmitted to Congress for its review. D.C. Law 19-177 became effective on Oct. 22, 2012.

ENROLLED ORIGINAL

AN ACT

D.C. ACT 19-338

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

MARCH 30, 2012

Codification
District of
Columbia
Official Code

2001 Edition

2012 Summer
Supp.

West Group
Publisher

To amend section 16-2702 of the District of Columbia Official Code to extend the time period that a plaintiff has to bring a claim against a defendant in a wrongful death suit from one year to 2 years.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Wrongful Death Emergency Act of 2012". Note,
§ 16-2702

Sec. 2. Section 16-2702 of the District of Columbia Official Code is amended by striking the phrase "one year" and inserting the phrase "2 years" in its place.

Sec. 3. Fiscal impact statement.
The Council adopts the fiscal impact statement of the Chief Financial Officer as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 4. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), and shall remain in effect for no longer than 90 days, as provided for emergency acts of the Council of the District of Columbia in section

A-23

412(a) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 788; D.C. Official Code § 1-204.12(a)).

Chairman
Council of the District of Columbia

Mayor
District of Columbia
APPROVED
March 30, 2012

**ENROLLED ORIGINAL**

AN ACT

## D.C. ACT 19-350

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

## APRIL 29, 2012

*Codification
District of
Columbia
Official Code*

2001 Edition

2012 Summer
Supp.

West Group
Publisher

To amend section 16-2702 of the District of Columbia Official Code to extend the time period
that a plaintiff has to bring a claim against a defendant in a wrongful death suit from one
year to 2 years.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this
act may be cited as the "Wrongful Death Temporary Act of 2012".

Sec. 2. Section 16-2702 of the District of Columbia Official Code is amended by striking   Note,
the phrase "one year" and inserting the phrase "2 years" in its place.   § 16-2702

Sec. 3. Fiscal impact statement.
The Council adopts the fiscal impact statement of the Chief Financial Officer as the fiscal
impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act,
approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 4. Effective date.
(a) This act shall take effect following approval by the Mayor (or in the event of veto by
the Mayor, action by the Council to override the veto), a 30-day period of Congressional review
as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December

A-25

**ENROLLED ORIGINAL**

24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of Columbia Register.

    (b) This act shall expire after 225 days of its having taken effect.

_____

Chairman
Council of the District of Columbia

_____

Mayor
District of Columbia
**APPROVED**
April 29, 2012